IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SHAIDON BLAKE,** | * | |
| Petitioner, | * | |
| v. | * | Civ. No. DLB-24-0697 |
| | | (Related Cases: |
| | * | Civ. No. PWG-13-1160,[1] |
| | | Civ. No. PWG-20-3563) |
| **STATE OF MARYLAND,** *et al.*, | * | |
| Respondents. | * | |

**MEMORANDUM OPINION**

On March 7, 2024, Shaidon Blake, an inmate incarcerated at North Branch Correctional Institution ("NBCI"), filed a document seeking injunctive relief. ECF 1. He claims that, due to fraud and other misconduct committed by the prosecution, he was wrongfully convicted of murdering a Bloods gang member in 2007 and has served 11½ of the past 18 years on administrative segregation because the prison believes the nature of his conviction places him at risk of serious injury. He asks the Court to overturn his conviction, vacate his sentence, and release him. *Id.* at 6. The Court construes the filing as a habeas petition under 28 U.S.C. § 2254.[2] On March 27, 2024, Blake filed a motion for appointment of counsel and to supplement his filing to

---

[1] The Clerk is directed to add Civ. No. PWG-13-1160 as a related case on the docket in this case.

[2] Blake's initial filing, titled "Emergency Preliminary Injunction & Temporary Restraining Order," was filed on February 5, 2024. The Court returned that filing to him because it appeared it was filed in a closed case. ECF 1-1; *see* ECF 1. Blake refiled the document with a cover letter stating this Court "miscons[tru]ed the intent and content of this request." ECF 1-1. He insists that he brings a new case based on the alleged misconduct of the State of Maryland, Brian Fish, and Patricia Jessemy, which has placed his life "in constant peril." *Id.* Blake states that, "[i]f not for their actions, [he] would not have been stabbed [in prison] and forced to be on permanent segregation." *Id.* In light of these assertions and the relief he seeks, the Court now construes the filing as a habeas petition.

add claims under 42 U.S.C. §§ 1985 and 1986 and add the Baltimore City Police Department and Lauren Lipscomb of the State's Attorney's Conviction Integrity Unit as defendants. ECF 3. Blake may amend as a matter of course, and his motion to supplement is granted. *See* Fed. R. Civ. P. 15(a)(1)(A). For the following reasons, the petition and motion for appointment of counsel are denied.

## I.     Blake's Allegations

In April 2007, Blake was convicted of conspiracy to commit first-degree murder and second-degree murder. He claims the "prosecutor Brian Fish relied on blood evidence as linkage from the victim, found in a[n] alley, to a house [Blake] frequented," but the State did not give the defense a lab report showing that the blood evidence was the victim's blood. ECF 1, at 1–2. Blake insists this failure violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963). He also claims that, when he ultimately obtained the lab report, he learned that "the blood is non-human in origin, making the state's repeated misrepresentation of this vital evidence, intentional fraud, requiring immediate overturning of the conviction and vacating of the sentence for a void judgment due to fraud on the court." *Id*. at 2. Blake claims the prosecution committed additional "fraud on the court" by "intentionally withholding a vital DNA report" that excluded him "as a contributor to any and all sources of DNA collected," so that he could not "properly prepare a defense." *Id*.

Blake next claims that the State presented Detective Darrell Merrick as "an expert witness and in the State's case-in-chief, in violation of the courts [sic] findings in *Garcia v. United States*, where the courts stated witness testimony as an expert cannot serve dual capacity." *Id.* at 3. Additionally, Blake claims Merrick's testimony violated "*Crawford* and the confrontation clause of the U.S. Constitution" because he testified about his video-recorded interview of a suspect in an unrelated crime, who stated that Blake was in Maryland to "essentially . . . act as a hitman for

2

the gangs." *Id*. Blake characterizes this evidence as "uncorroborated testimony of an out of court declarant." *Id*. Blake contends that the prosecutor committed fraud on the court by eliciting Merrick's testimony that the interviewee, known as "Bloody Eyes," was the nephew of a gang leader. *Id*. at 3–4. Blake contends that Bloody Eyes does not exist and that the prosecutor committed fraud because he knew the testimony he elicited was untruthful. *Id*.

In Blake's view, these claims challenging his conviction support his request for injunctive relief because the Bloods in Maryland have been trying to kill him based on the State's evidence at trial. ECF 1, at 4. He states that his case was covered by the news, and as a result, he was "attacked and stabbed within a week of arriving at NBCI." *Id*. After that, he was housed on administrative segregation for three years and then transferred to Kansas because it was determined he could not be housed safely in Maryland. *Id*. When Blake returned to Maryland one year later for post-conviction proceedings, he was housed at Maryland Reception Diagnostic Classification Center and then transferred to Jessup Correctional Institution. *Id*. at 5. Every time Blake has been released to general population, he has been returned to administrative segregation shortly thereafter because of a credible threat on his life. *Id*. As a result, he has been housed in administrative segregation for 11½ of the 18 years he has served. *Id*. He claims that "to be subjected to this many years under the serious threat of murder is cruel and unusual punishment that was caused by the manifest injustice created by the respondent's gross misconduct and fraud on the court, requiring immediate relief." *Id*.

## II. Second or Successive Petition

The Court construes Blake's filing as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 because he challenges aspects of his criminal trial and conviction. This is not Blake's first petition for a writ of habeas corpus. *See, e.g.*, *Blake v. Wolf*, Civ. No. PWG-13-1160

(D. Md. 2015) ("*Blake 2015*").³ In *Blake 2015*, the Court considered and rejected Blake's challenges to his conviction, including the *Brady* claim and the claims regarding Merrick's testimony. ECF 39, at 26–29, 31, 34–36 in *Blake 2015*.

To file a second or successive habeas petition in this Court, Blake first must file a motion with the United States Court of Appeals for the Fourth Circuit asking for authorization. 28 U.S.C. § 2244(b)(3). Because Blake has not complied with this "gatekeeper" provision, his successive application for habeas corpus relief is dismissed pursuant to 28 U.S.C. § 2244(b)(3).⁴

### III.   Claims for Damages under §§ 1985 and 1986

In his supplemental pleading, Blake added claims under 42 U.S.C. §§ 1985 and 1986. Under § 1985, it is unlawful to, *inter alia*, conspire to interfere with court proceedings "by force, intimidation, or threat" or "with intent to deny to any citizen the equal protection of the laws" or "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(2), (3). Section 1986 provides a cause of action against "every person who has knowledge of, and power to prevent, a § 1985 conspiracy, but neglects or refuses to act." *Burnett v. Grattan*, 468 U.S. 42, 44 n.5 (1984). A § 1986 claim "is dependent upon the existence of a claim under § 1985," and therefore, if the court dismisses a § 1985 claim, it also must dismiss the § 1986 claim. *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985). If Blake did not intend to file a habeas

---

³ *See also Blake v. Fish, et al.*, Civ. No. PWG-18-137 (D. Md. 2018) (dismissed as successive petition); *Blake v. Zmuda*, Civ. No. 21-3006-SAC, 2021 WL 1516422 (D. Kan. 2021) (dismissed habeas as third petition).

⁴ Blake must comply with the Fourth Circuit's procedural requirements and deadlines for filing a motion for an authorization order. Attached to this Order is a packet containing the Fourth Circuit's instructions on seeking authorization to file a successive habeas petition. Before this Court may consider his claims, Blake first must obtain authorization from the Fourth Circuit to file a successive petition.

petition at all and, instead, intended to file claims for damages under § 1985 and § 1986, he has not stated a claim under those statutes.

As a preliminary matter, the Court notes that Blake has not paid a filing fee. Title 28 U.S.C. § 1915(a)(1) permits an indigent litigant to commence an action in this Court without prepaying the filing fee. To guard against possible abuses of this privilege, the statute requires dismissal of any claim that is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii), 1915A(b). "[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff'"; the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570)).

Blake complains about conduct that occurred before his April 2007 conviction—more than 17 years before he filed this lawsuit. He does not allege that he recently learned about any of the alleged facts. The relevant statutes of limitations expired more than a decade before Blake filed suit. *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) ("It is well-settled that section[] . . . 1985 borrow[s] the state's general personal injury limitations period, which in Maryland is three years." (citing Md. Code Ann., Cts. & Jud. Proc. § 5–101)); 42

U.S.C. § 1986 (one-year statute of limitations). When, as here, the plaintiff has not paid the filing fee, the Court may dismiss a time-barred claim *sua sponte*. *United States v. Oliver*, 878 F.3d 120, 127 (4th Cir. 2017) (noting "courts should not invoke a statute of limitations sua sponte unless proceeding to the merits would significantly implicate the efficiency and integrity of the judicial process," such as when a plaintiff brings an untimely complaint pursuant to 28 U.S.C. § 1915, that is, without paying the filing fee). Blake's § 1985 and § 1986 claims are dismissed.

### IV. Injunctive Relief under 42 U.S.C. § 1985 or § 1986

To the extent that Blake seeks injunctive relief under 42 U.S.C. § 1985 or § 1986, he has not demonstrated a right to such relief. He raised similar claims in *Blake v. Green*, Civ. No. PWG-20-3563, 2021 WL 2981804 (D. Md. 2021) ("*Blake 2021*"). In that case, this Court analyzed his claim challenging his long-term segregation as follows:

> A liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995). Whether Blake was entitled to due process before being assigned to long term segregation or to CBB status hinges upon whether the conditions under which he has been confined constituted an atypical and significant hardship. Assignment to administrative segregation alone does not create an atypical and significant hardship. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (holding that administrative segregation is part of the ordinary incidents of prison life). The Supreme Court found that conditions in a super-maximum prison where human contact and communication between cells was forbidden and exercise was limited to one hour a day in a small indoor room were not enough alone to implicate liberty interest. *See Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). Rather the duration of the confinement to the prison enforcing those conditions created a liberty interest in avoiding a transfer there. *Id*. The *Wilkinson* prisoners received only annual reviews and "even inmates with exemplary behavior rarely progress[ed] through [the prison] in less than two years." *Austin v. Wilkinson*, 189 F. Supp. 2d 719, 740 (N.D. Ohio 2002).
>
> There is no evidence here that Blake has been subjected to conditions of confinement that are atypical and substantially harsh. His designation on CBB status directly relates to his chronic violation of prison rules, and he is provided a monthly review of his long-term segregation assignment, similar to the monthly reviews provided to inmates confined to administrative segregation in Maryland prisons. Blake's confinement to segregation does not approach the draconian

> conditions condemned by the Supreme Court in Wilkinson, nor does it run afoul of
> the due process protections he would otherwise receive if confined in Maryland.

ECF 18, at 17–18 in *Blake 2021*; *Blake 2021*, 2021 WL 2981804, at *9. This Court then found that Blake had not been subjected to inhumane conditions of confinement during his stay in Kansas. *Id*. Injunctive relief was denied.

Injunctive relief "is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). A plaintiff seeking such relief must meet "a high bar" by "[s]atisfying . . . four factors." *SAS Institute, Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017). The plaintiff must show "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009) (discussing *Winter* factors).

When a prisoner seeks injunctive relief that would affect the management of a correctional institution, the Court should grant the request only under extraordinary and compelling circumstances "so as not to assume the role of prison administrators." *See Taylor v. Freeman*, 34 F.3d 266, 269–70 & n.2 (4th Cir. 1994). Additionally,

> [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in [18 U.S.C. § 3626(a)] (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under [18 U.S.C. § 3626] (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. § 3626(a)(2) (permitting court to "enter a temporary restraining order or an order for preliminary injunctive relief" in a "civil action with respect to prison conditions").

Blake has not shown he is entitled to injunctive relief. He has not shown a likelihood of success on a § 1985 or § 1986 claim or that he will be irreparably harmed without an injunction. He claims that he has been housed in segregation for almost two-thirds of his imprisonment because false trial evidence portrayed him as a hitman for gangs, which makes general population unsafe for him. But this Court previously noted that Blake was placed in segregation repeatedly for rules violations, threatening officers, and using and possessing drugs and other contraband, and ultimately, the prison "assigned him to segregated housing for 'consistent bad behavior.'" *Blake 2021*, 2021 WL 2981804, at *3–6 (cataloging 11 charges that totaled 945 days of administrative segregation). Thus, his claim that he has been on segregation for 11½ years for his own safety is implausible. In addition, Blake has not shown the balance of equities or the public interest favors an injunction. His request for injunctive relief is denied.

V.      **Motion for Appointment of Counsel**

In civil cases, a federal district court judge has the discretion under 28 U.S.C. § 1915(e)(1) to appoint counsel, but only if an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). "Courts consider 'the type and complexity of the case,' whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim." *Giddings v. Montgomery Cnty.*, No. GJH-21-959, 2021 WL 5921382, at *1 (D. Md. Dec. 15, 2021) (quoting *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989)), *aff'd sub nom. Giddings v. Montgomery Cnty., Maryland*, No. 22-6057, 2022 WL

1284296 (4th Cir. Apr. 29, 2022). Because Blake's claims are dismissed, his motion for appointment of counsel is denied.

VI. **Certificate of Appealability**

When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Blake's pleading fails to demonstrate that a certificate of appealability should issue; he may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

The petition is dismissed, and a certificate of appealability shall not issue. A separate order follows.

May 7, 2024
Date

Deborah L. Boardman
United States District Judge